IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

CHRISTOPHER MICHAEL HALE,

      Plaintiff,

v.                                         No. 11-cv-0128 RB/SMV

THE GEO GROUP, INC.,
N.M. CORRS. DEP'T,
ISSAC GUERRA,
TOM PERRY,
JESSICA VIGIL,
DAVID N. EASTRIDGE,
TOMMY ARCHULETA,
ROBERT FELIX,
PHIL ARAGON,
RUSSELL HONEA,
SAMUEL CHRISTIE, and
GREGORY MITCHELL,

      Defendants.

## MAGISTRATE JUDGE'S PROPOSED FINDINGS
## AND RECOMMENDED DISPOSITION

      THIS MATTER is before the Court on Plaintiff Christopher Michael Hale's Prisoner's

Civil Rights Complaint [Doc. 1] ("Complaint"), filed February 8, 2011; Plaintiff's Motion to

Add to Original Complaint [Doc. 29] ("Amended Complaint"), filed June 17, 2011;[1] the

Defendants' *Martinez* Report [Doc. 74], filed February 28, 2012;[2] Plaintiff's Ordered Response

---

    [1]  Pursuant to a Memorandum Opinion and Order [Doc. 33], issued by the Honorable Robert C. Brack, United States District Judge, Plaintiff's operative Complaint comprises two filings, i.e., his Prisoner's Civil Rights Complaint [Doc. 1] and his Amended Complaint [Doc. 29].

    [2]  All individual Defendants (except for Defendant Christie) have answered and joined in the original *Martinez* report. *See* Certain Defendants' Answer to Complaint and Amended Complaints [Doc. 170] (filed January 30, 2013); Defendant Gregory Mitchell's Answer to Complaint and Amended Complaints [Doc. 176] (filed

to *Martinez* Report [Doc. 90] ("Response"), filed March 15, 2012; and the Defendants' Reply In Support of *Martinez* Report [Doc. 91] ("Reply"), filed March 21, 2012.  On March 21, 2012, Judge Brack referred this matter to me to recommend an ultimate disposition.   Order of Reference . . . [Doc. 93].

Plaintiff alleges that Defendants violated his constitutional rights by confiscating his religious materials, retaliating against him for filing prison grievances, failing to provide him with necessary medical care, and physically assaulting him. *See generally* Complaint [Doc. 1]; Amended Complaint [Doc. 29]. Defendants argue that Plaintiff's claims are without merit and ask the Court to grant summary judgment on all claims. *See generally Martinez* Report [Doc. 74]. The Court, having considered the parties' filings, the relevant law, and otherwise being fully advised in the premises, RECOMMENDS that Defendants' *Martinez* Report, which it construes as a motion for summary judgment, be GRANTED IN PART and DENIED IN PART.

## I.    Background

Plaintiff was incarcerated at the Lea County Correctional Facility ("LCCF") and the Guadalupe County Correctional Facility ("GCCF") at all times relevant to this action. *See Martinez* Report [Doc. 74] at 1.  He seeks damages pursuant to 42 U.S.C. § 1983 for violations of his constitutional rights while incarcerated. Complaint [Doc. 1] at 2.[3]  Plaintiff's Complaint

---

February 13, 2013); Certain Defendants' Notice of Joinder [Doc. 171] (filed January 30, 2013); and  Defendant Gregory Mitchell's Notice of Joinder [Doc. 177] (filed February 13, 2013).

[3] Originally, Plaintiff named only the GEO Group and the New Mexico Corrections Department ("DOC") as Defendants in his Complaint and Amended Complaint.  [Docs. 1 and 29].  He later sought to amend his Complaint to add multiple individual officers as Defendants in this case.  *See* Plaintiff's Motion to Add the Proper Individuals['] names [as] Defendant[s to] the Complaint [Doc. 67].  This Court recommended that the motion be granted in part and denied in part.  *See generally* Proposed Findings and Recommended Disposition [Doc. 138]. Judge Brack adopted this Court's recommendation and the ten officers named in the caption are the only remaining Defendants in this action.  Order Adopting Magistrate Judge's Proposed Findings and Recommended Disposition [Doc. 143] at 16–18.

and Amended Complaint assert four claims: (a) that Defendants Guerra and Perry confiscated his religious materials, (b) that Defendant Mitchell struck him in the head while he was handcuffed, (c) that Defendants Vigil, Archuleta, Eastridge,[4] and Felix were deliberately indifferent to his serious medical needs after he was sprayed with pepper spray, and (d) that Defendants Aragon, Honea, and Christie retaliated against him in a variety of ways to punish him for filing prison grievances. *See generally* Complaint [Doc. 1] at 3, 11–18; Amended Complaint [Doc. 29] at 3–4. The Court will address each claim in turn.

### a. Confiscation of Religious Materials

Plaintiff claims that Defendants Guerra and Perry violated his constitutional rights by confiscating and discarding his religious materials on September 10, 2010. Complaint [Doc. 1] at 3.[5] Plaintiff claims to be a member of the Asatru faith, [Doc. 1] at 3, which is a polytheistic Norse religion devoted to honoring the Gods, Goddesses, and the practitioner's ancestors. *See* United States Department of Justice, Federal Bureau of Prisons, Inmate Religious Beliefs and Practices at 220 (2002), available at www.nicic.org/pubs/2002/017613.pdf. Plaintiff states that he was speaking at an Asatru gathering in the chapel of LCCF on the evening of September 10 when he was "pulled out" to a meeting with several corrections officers, including Defendants Guerra and Perry. Response [Doc. 90] at 6–7. Plaintiff was carrying several manila folders

---

[4] Defendant Eastridge was not mentioned in the Magistrate Judge's PF&RD [Doc. 138]. However, upon a review of the record, the Court determined that Plaintiff did assert deliberate indifference claims against Defendant Eastridge for failing to provide Plaintiff with a shower after the pepper spray incident. Memorandum Opinion and Order [Doc. 143] at 12–13.

[5] Plaintiff's Complaint and Amended Complaint provide little factual information to support his various claims. The facts relating to his claims are gleaned from both the Complaint and Amended Complaint, as well as Defendants' *Martinez* Report, which contains copies of the innumerable grievances and letters that Plaintiff wrote while incarcerated. *See generally* [Doc. 74].

containing his "religious materials."[6]  Although the reason for the meeting with the corrections officers is not entirely clear, it appears that the prison administration, believing Plaintiff to be a member of the Aryan Brotherhood gang, suspected that the folders contained racist materials. *See, e.g.*, *Martinez* Report [Doc. 74] at 11 (stating that Plaintiff is a suspected member of the Aryan Brotherhood of Texas and that he has a swastika tattoo on his left calf); [Doc. 74-1] at 13−14 (stating that Defendant Perry believed the materials in the manila folder to be racist).

Plaintiff explained to Defendants Guerra and Perry that the manila folders contained mostly religious materials, and that nothing in the folders was racist. *Id*.  Nevertheless, they confiscated all the materials.  *Id*. at 14; Response [Doc. 90] at 7.  Although Defendant Guerra assured Plaintiff that the materials would be held in a lockbox, Plaintiff later learned that the materials had been thrown away.  [Doc. 74-1] at 14; Response [Doc. 90] at 7.  Plaintiff filed a grievance regarding the incident.  Following an investigation, the LCCF administration admitted that his "literature came up missing" and awarded him $10.00 in damages. [Doc. 74-1] at 17.

Plaintiff alleges that the confiscation of his religious materials made it impossible for him to "worship properly or perform [his] daily Blot in order to perform [his] daily worship/commune."  Complaint [Doc. 1] at 12.  According to the Federal Bureau of Prisons, the Blot (pronounced "bloat") is a "ritual sacrifice made in honor of a God or Goddess," though the ceremony is sometimes symbolic and does not involve an actual sacrifice. United States Department of Justice, Federal Bureau of Prisons, Inmate Religious Beliefs and Practices at 220 (2002),   http://www.nicic.org/pubs/2002/017613.pdf.   Plaintiff   has   never   explained   what

---

[6]  Plaintiff has never explained what these materials were.

4

"religious materials" were confiscated or how their absence prevented him from performing his "daily Blot."

### b. **Assault by Defendant Mitchell**

On September 11, 2010, Plaintiff was attending a "religious tent revival" meeting when he became involved in a fight with some other prisoners. *Martinez* Report [Doc. 74-16] at 7.[7] He was placed in handcuffs as a result. *Id.* Plaintiff asserts that he offered no resistance after he was handcuffed. *Id.* He claims that while he was handcuffed, Defendant Mitchell approached him from behind, struck him in the back of his head, and then grabbed his hair and pulled his head back painfully. *Id.* at 7–8. While holding Plaintiff's hair, Defendant Mitchell purportedly called out to Defendant Perry and asked whether Plaintiff was "the racist" that Perry had been talking about. *Id.* Plaintiff claims that this assault resulted in a temporary loss of vision and subsequent vision problems in his left eye. Amended Complaint [Doc. 29] at 1.

Another inmate, Rodney Paschoal, witnessed the alleged assault and provided a statement supporting Plaintiff's version of events. Paschoal was standing in front of Plaintiff when he heard someone call out, "[I]s this that racist piece of shit?" *See* [Doc. 74-16] at 17 (undated Rodney Paschoal Letter). Paschoal turned and saw an unidentified officer with gold on his lapels punch Plaintiff in the back of the head. *Id.*

Both Defendants Perry and Mitchell gave statements to a grievance coordinator at LCCF regarding the purported assault. *Id.* at 12–13. Both denied participating in or witnessing any assault on that date. *Id.* Defendant Perry stated that Defendant Mitchell did not ask him any questions regarding Plaintiff. *Id.* at 12. Defendant Mitchell stated simply, "I did not hit [any]

---

[7] Plaintiff disputes that a fight occurred, and instead claims that he was detained "due to some horseplay." *Martinez* Report [Doc. 74-16] at 7.

inmate[.]  I did not even go into the rec yard.  I responded with chemical agents[,] therefore I remained secured behind a locked gate."  *Id.* at 13.

Plaintiff was seen by the prison's medical unit on the day of the alleged assault.  *Martinez* Report [Doc. 74-18] at 2.  No significant injuries were recorded.  *Id.*

### c.   <u>Failure to Treat Pepper Spray Injuries</u>

Plaintiff got into a fight with another inmate named Robert Moyle on October 26, 2010. Complaint [Doc. 1] at 3.  Corrections officers sprayed both inmates with pepper spray[8] in order to break up the fight.  *Martinez* Report [Doc. 74] at 14.  Plaintiff and Moyle were taken to the prison's medical unit for treatment after the incident.  *Id.* at 15.  The medical record from that visit indicates that Plaintiff complained only of bilateral knee discomfort and abrasions. [Doc. 74-6] at 4.  There is no mention of any injury or discomfort relating to the pepper spray. *Compare id.* at 4 (Plaintiff's medical record), *with id.* at 5 (Moyle's medial record, indicating left eye discomfort "due to phase 4 [pepper spray]").

Notwithstanding the medical record, Plaintiff claims that the pepper spray had gotten onto his arm and face, and that he felt like it "was eating [his] skin."  Complaint [Doc. 1] at 3. He told several corrections officers that he was in pain.  *Id.*  The officers in the medical unit told Plaintiff that he would be taken care of later but did nothing else to help him.  *Id.*  A nurse told him that he would be given a decontamination shower once he was placed in segregation.  *Id.* at 15.  Upon arriving in the segregation unit on October 26, Plaintiff advised three different officers that he needed a decontamination shower, and he alleges that none took him to get one.  *Id.*

---

[8] Plaintiff refers to the chemical agent that was used against him and Moyle as "mace" in all of his pleadings.  However, Defendants have provided an affidavit of Sergeant Mike Gauna, armory sergeant at GCCF. [Doc. 74-22] at 3.  Sergeant Gauna states that the chemical agent used against Plaintiff and inmate Moyle was actually Oleoresin Capsicum Pepper Spray ("pepper spray").  To be consistent with Sergeant Gauna's affidavit, the Court shall refer to the chemical agent as "pepper spray."

Plaintiff claims that he told Defendant Archuleta that he needed a shower.  *Id.*  Archuleta promised he would return but never did. *Id*. at 15–16. Plaintiff then advised Defendant Eastridge that the water fountain in his segregation cell did not work and that his "skin was burning up bad." *Id*. at 16.  Eastridge explained that he was not the regular segregation officer and that Plaintiff would have to wait for the night shift to get help.  *Id.*  Plaintiff also asked Defendant Felix for a shower, but Felix "told me I was dumb [and that] he wasn't going to let me shower." *Id*.  Plaintiff again asked Defendants Archuleta and Felix for a shower on the night of October 27, but both Defendants refused his request.  *Martinez* Report [Doc. 74-3] at 6–7, 10–11.

Plaintiff was not given a decontamination shower until October 28, two days after he was sprayed.  *Id*. at 18; Amended Complaint [Doc. 29] at 3. He alleges that he had no running water in his cell for those two days, forcing him to use spit and urine to clean off the pepper spray. Amended Complaint [Doc. 29] at 3.  Plaintiff was seen by medical staff on October 31, three days after his decontamination shower.  *Id.* at 6.  The medical record for that visit indicates that Plaintiff's skin was red and "blotchy," and that his left arm was blistered.  *Id*.  The nurse applied Silvadene cream, an antimicrobial agent, to the reddened areas of his skin, which gave him some relief.  *Id*.

### d.  Retaliation for Filing Grievances

Plaintiff alleges that Defendants Christie, Honea, and Aragon retaliated against him for filing prison grievances.  Complaint [Doc. 1] at 11.

### (i)  Defendant Christie

Plaintiff claims that on October 1, 2010, he asked Officer Christie to deliver a book to another inmate on Plaintiff's cell-block.  *Id*. at 13.  Although Christie agreed to deliver the book,

he was sufficiently annoyed that he told Plaintiff he would lose his recreation and shower privileges on Christie's next shift. *Id*.; *Martinez* Report [Doc. 74-11] at 7–8.[9]  The next day, October 2, Christie informed Plaintiff that he would not be allowed to shower or go to recreation, and that if he asked another guard to be let out of his cell, Christie would "tear [Plaintiff's] room apart." *Martinez* Report [Doc. 74-11] at 8.  Plaintiff nevertheless requested a shower on October 2 and, after returning from the shower, found that someone had tampered with his food tray: his "corn bread [was] mashed up with all [his] other food (beans & chili)." *Id*. at 9–10. He also discovered that a picture was missing from his cell, and that a picture of his sister had been torn in half. *Id*. at 10.  Finally, the sheets on his bed had been removed.  Complaint [Doc. 1] at 14.  He claims the sheets were never returned before he was transferred to GCCF on October 21, 2010. *Id*.

### (ii)  Defendant Honea

Plaintiff complained to Defendant Honea about Defendant Christie's actions.  Honea replied by stating that he had been in the room when Christie tore up Plaintiff's photos.  *Id*. Honea warned that he would beat up Plaintiff with his guard stick if Plaintiff made a report against either Christie or Honea.  *Id*. at 13.  Subsequently, on October 5, 2010, Honea gave Plaintiff's meal tray to a different prisoner, forcing Plaintiff to request another meal from his case manager.  *Id*. at 14–15.

---

[9] As noted, Plaintiff's claims against Defendants Honea and Christie are somewhat disjointed. Plaintiff's grievance dated October 11, 2010, provides a straightforward narrative regarding the alleged retaliation by Defendants Honea and Christie, and the Court therefore cites to this grievance as a factual basis for Plaintiff's claims. *See Martinez* Report [Doc. 74-11] at 7–13.

### (iii)  Defendant Aragon

Plaintiff's claim against Defendant Aragon relates to Plaintiff's placement in "level 6 max lock down" on November 1, 2010, following his transfer to GCCF.  *Id.* at 15.  Defendants explain that Plaintiff was placed in Administrative Segregation following his fight with Mr. Moyle on October 26, 2010.  *See Martinez* Report [Doc. 74-5] at 18 (stating that Plaintiff would be placed in segregation while the fight was investigated). The detention report states that Defendant Aragon, among others, was notified of the decision to place Plaintiff in segregation during the investigation.  *Id.*   It appears that the investigation lasted until November 9, 2010, after Plaintiff's transfer to GCCF.  *Id.* at 20.  Plaintiff was found guilty of a major level violation for the fight with Moyle and, though he was sentenced to disciplinary segregation for twenty days, the sentence was suspended pending 180 days of good conduct. *Id.* While Plaintiff acknowledges that his segregation was supposedly due to an "internal affairs" investigation, he nevertheless believes that it was actually an "attempt to punish [him] for seeking help[.]" Complaint [Doc. 1] at 15.

### II.    Standard of Review

In the Court's Order directing submission of a *Martinez* Report, the parties were advised, pursuant to *Hall v. Bellmon*, 935 F.2d 1106, 1111 (10th Cir. 1991), that their submissions could be used in deciding whether to grant summary judgment. [Doc. 62] at 3–4. Defendants have requested that the Court construe their *Martinez* Report as a motion for summary judgment, and the Court finds it appropriate to do so.  *Martinez* Report [Doc. 74] at 1; Certain Defendants' Notice of Joinder [Doc. 171]; Defendant Gregory Mitchell's Notice of Joinder [Doc. 177].

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled as a matter of law." FED. R. CIV. P. 56(a). The party moving for summary judgment has the initial burden of establishing, through admissible evidence in the form of depositions, answers to interrogatories, admissions, affidavits or documentary evidence, that there is an absence of evidence to support the opposing party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If this burden is met, the party opposing summary judgment must come forward with specific facts, supported by admissible evidence, which demonstrate the presence of a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986). Although all facts are construed in favor of the nonmoving party, it is still the nonmoving party's responsibility to "go beyond the pleadings and designate specific facts so as to make a showing sufficient to establish the existence of an element essential to [his] case in order to survive summary judgment." *Johnson v. Mullin*, 422 F.3d 1184, 1187 (10th Cir. 2005) (alteration in original) (internal quotation marks omitted).

The Court liberally construes Plaintiff's filings because he is appearing pro se. *Hall*, 935 F.2d at 1110. Nevertheless, a non-moving party must still "identify specific facts that show the existence of a genuine issue of material fact." *Munoz v. St. Mary-Corwin Hosp.*, 221 F.3d 1160, 1164 (10th Cir. 2000) (internal quotation marks omitted). Conclusory allegations are insufficient to establish an issue of fact that would defeat the motion. *Harrison v. Wahatoyas, L.L.C.*, 253 F.3d 552, 557 (10th Cir. 2001). Additionally, in deciding a motion for summary judgment, the Court may treat the verified Complaint and the *Martinez* Report as affidavits. *Hall,* 935 F.2d at 1111.

### a.   Exhaustion under the Prison Litigation Reform Act

Prisoners filing suit under 42 U.S.C. § 1983 must abide by the exhaustion requirements of the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e.   In order to exhaust administrative remedies, a prisoner must properly complete the entire administrative review process that is set forth by the prison's grievance policy.   *Jones v. Bock*, 549 U.S. 199, 218 (2007); *Thomas v. Parker*, 609 F.3d 1114, 1118 (10th Cir. 2010).   Failure to exhaust administrative remedies prohibits a federal court from considering the merits of a prisoner's claims for relief. *Jones*, 549 U.S. at 216.   If, however, a prison accepts an untimely-filed grievance and considers it on the merits, that step makes the "filing proper for purposes of state law and avoids exhaustion, default, and timeliness hurdles in federal court."   *Ross v. Cnty. of Bernalillo*, 365 F.3d 1181, 1186 (10th Cir. 2004), *overruled on other grounds by Jones v. Bock*, 549 U.S. 199 (2007).   A prisoner does not exhaust his administrative remedies when he fails to properly complete the grievance process or correct deficiencies in his grievances before filing a lawsuit.   *Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002); *see also Rainey v. Boyd*, No. 12-cv-00564-CMA-MEH, 2012 U.S. Dist. LEXIS 124681, at **20–21 (D.Colo. August 15, 2012) (recommending dismissal of § 1983 claim as unexhausted where grievance was not completed until after the complaint was filed in federal court).   If a prisoner fails to exhaust the administrative procedures, his case must be dismissed without prejudice to afford the plaintiff an opportunity to exhaust his administrative remedies.   *Fitzgerald v. Corr. Corp. of Am.*, 403 F.3d 1134, 1139 (10th Cir. 2005).

Nonetheless, in the event that an incarcerated plaintiff who brings a § 1983 action "fails to state a claim upon which relief can be granted, . . . the court may dismiss the underlying claim without first requiring exhaustion of administrative remedies."  42 U.S.C. § 1997e(c)(2).

### III.   **Analysis**

Plaintiff claims that the Defendants violated his constitutional rights by confiscating his religious materials, using excessive force against him, ignoring his serious medical needs, and retaliating against him for filing prison grievances. Defendants argue that they are entitled to summary judgment on every claim and present several theories for dismissing each individual claim. *See generally Martinez* Report [Doc. 74] at 9–41. The Court will address each of Plaintiff's claims in turn.

### a.   **Confiscation of Religious Material**

Defendants raise the affirmative defense of lack of exhaustion of administrative remedies. They provide documentation evidencing Plaintiff's grievance process with respect to this claim, and assert that Plaintiff's relevant grievances do not satisfy the exhaustion requirement because they do not "adequately describe the basis of the claim which Plaintiff now asserts and [they do] not raise all of the issues Plaintiff now attempts to assert."  *Martinez* Report [Doc. 74] at 29. However, upon substantive review, the Court finds that Plaintiff has failed to state a claim upon which relief can be granted, and therefore will not first require that Plaintiff exhaust this claim.

Plaintiff claims that he is an adherent of the Asatru faith and that Defendants Guerra and Perry wrongfully confiscated his Asatru "religious materials" on the evening of September 10, 2010. Complaint [Doc. 1] at 3. He claims that this prevented him from being able to "worship properly or perform [his] daily Blot in order to perform [his] daily worship/commune." *Id.* at 12.

Although neither the Complaint nor the Amended Complaint cites to any legal authority, the Court liberally construes Plaintiff's argument as raising a claim under the First Amendment for depriving him of his right to practice his religion.  *See Hall*, 935 F.2d at 1110 (pro se litigants' filings to be construed liberally).  It is well-settled that "[i]nmates . . . retain protections afforded by the First Amendment, including its directive that no law shall prohibit the free exercise of religion." *O'Lone v. Estate of Shabazz,* 482 U.S. 342, 348 (1987).  Free exercise claims are subject to a two-step inquiry.  First, the plaintiff has the burden of showing that a prison regulation "substantially burdened . . . sincerely held religious beliefs." *Boles v. Neet*, 486 F.3d 1177, 1182 (10th Cir. 2007).  Should the plaintiff meet this requirement, the burden shifts to the defendant to "identif[y] the legitimate penological interests that justif[ied] the impinging conduct." *Id*. (citing *Salahuddin v. Goord*, 467 F.3d 263, 275 (2d Cir. 2006)).

Defendants assert, *inter alia*, that Plaintiff has not met his burden of establishing either prong of the free exercise test.  First, they argue that there is no evidence that Plaintiff was a sincere practicing member of the Asatru faith.  They base this argument on the fact that prison records identify him as Christian, and that he has a tattoo of a cross on his arm.  [Doc. 74] at 30; [Doc. 74-21] at 2–7. Second, they argue that, even if the Court were to find Plaintiff to be a devout follower of Asatru, Plaintiff has not demonstrated that Defendants' actions substantially burdened his ability to worship his faith.  *Id*. at 30–31.

The Court finds that there is a genuine issue of fact as to whether Plaintiff's Asatru faith is "sincerely held."  Plaintiff disputes that he ever held himself out as a Christian and asserts that the tattoo on his right arm is not a cross, but rather a "life tree."  Response [Doc. 90] at 26 (stating that he told the Chaplain of LCCF as well as two other correctional facilities that he

practiced the Asatru religion). The Court of Appeals for the Tenth Circuit has cautioned that the "inquiry into the sincerity of a free-exercise plaintiff's beliefs is almost exclusively a credibility assessment . . . and therefore the issue of sincerity can rarely be determined on summary judgment." *Snyder v. Murray City Corp.*, 124 F.3d 1349, 1352–53 (10th Cir. 1997). Dismissal on the sincerity prong of the free exercise test is appropriate "only in the very rare case in which the plaintiff's beliefs are so bizarre, so clearly nonreligious in motivation that they are not entitled to First Amendment protection." *Kay v. Bemis*, 500 F.3d 1214, 1219–20 (10th Cir. 2007) (internal citations and quotations omitted). In this case, Plaintiff claims to be a practicing member of a religion recognized by the Bureau of Prisons. The Court cannot assess the credibility of that claim on a motion for summary judgment. The Court is compelled to find that there is a material question of fact as to the sincerity of Plaintiff's belief in the Asatru religion.

Nonetheless, the Court agrees with Defendants' assertion that Plaintiff has not shown that his right to practice his religion was substantially burdened. Plaintiff has never described what the confiscated materials comprised, or how their absence prevented him from practicing his religion. Moreover, even if Plaintiff could explain how the materials were necessary to his worship, Plaintiff's claim would still fail because he has not shown that his right to practice his religion was substantially burdened by a prison regulation. As previously noted, the First Amendment is concerned with prison *regulations* that pervasively restrict an inmate's right to practice his religion. *Boles v. Neet*, 486 F.3d 1177, 1182 (10th Cir. 2007). In this instance, Plaintiff has identified no prison rule or regulation that affected his ability to worship. His claim is based solely upon Sgt. Perry's individual decision to confiscate his materials. This shows, at most, an isolated negligent act, one that does not rise to the level of a constitutional violation.

14

*Gallagher v. Shelton*, 587 F.3d 1063, 1070 (10th Cir. 2009) ("Taking these allegations as true, defendants' actions were, at most, isolated acts of negligence, not pervasive violations of Gallagher's right to free exercise of religion. . . . [A]n isolated act of negligence w[ill] not violate an inmate's First Amendment right to free exercise of religion."); *see also Peterson v. Lampert*, No. 11-8107, 2012 WL 4857050, at *1–2 (10th Cir. Oct. 15, 2012) (unpublished) (prison's losing box of religious materials including a crystal wand, tarot cards, and satanic bible was no more than an "isolated act of negligence" and did not give rise to a constitutional violation); *White v. Glantz*, No. 92-5169, 1993 WL 53098, at *2 (10th Cir. Feb. 25, 1993) (unpublished) ("Although the Plaintiff was most certainly annoyed and exasperated [the] isolated negligent act of the Defendants cannot support a claim that the Plaintiff was denied his First Amendment right to freedom of religion.").   Accordingly, the Court recommends that Defendants Guerra and Perry's motion for summary judgment be granted with respect to Plaintiff's free exercise of religion claims, and that these claims and Defendants be dismissed with prejudice.

### b.  Defendant Mitchell's Alleged Assault of Plaintiff

Defendant Mitchell raises the affirmative defense of lack of exhaustion of administrative remedies. He provides documentation evidencing Plaintiff's grievance process with respect to this claim.   Mitchell does not dispute that Plaintiff completed the grievance process in full; rather, he argues that this claim is technically unexhausted because the grievance was untimely per the regulations for the grievance process. *Martinez* Report [Doc. 74] at 37.   However, no one in the grievance process raised untimeliness as a basis for denial of relief.   I find, therefore, that Plaintiff's claim against Defendant Mitchell is exhausted. *See Ross*, 365 F.3d at 1186 (timeliness

requirement waived where the prison administration accepts an untimely grievance and considers it on the merits).

Plaintiff alleges that Captain Mitchell struck him in the back of the head, grabbed his hair, and yanked his head backward. Complaint [Doc. 1] at 12. He claims that he was handcuffed at the time and offering no resistance. *Id.*; *see also* Inmate Grievance Dated October 8, 2010 [Doc. 74-16] at 7–8. Plaintiff has tendered the statement of Rodney Paschoal, who confirms that he saw an unnamed prison guard "punch" Plaintiff in the back of the head. [Doc. 74-16] at 17. Plaintiff claims that this assault resulted in a temporary loss of vision and subsequent vision problems in his left eye. Amended Complaint [Doc. 29] at 1.

The Eighth Amendment's prohibition against cruel and unusual punishment protects inmates from "the unnecessary and wanton infliction of pain" by corrections officers. *Hudson v. McMillan*, 503 U.S. 1, 5 (1992). A claim that prison officials used excessive force "involves two prongs: (1) an objective prong that asks 'if the alleged wrongdoing was objectively "harmful enough" to establish a constitutional violation,' and (2) a subjective prong under which the plaintiff must show that 'the officials act[ed] with a sufficiently culpable state of mind.'" *Giron v. Corr. Corp. of Am.*, 191 F.3d 1281, 1289 (10th Cir. 1999) (quoting *Hudson*, 503 U.S. at 8). The objective component of an excessive force claim is "contextual and responsive to contemporary standards of decency." *Hudson*, 503 U.S. at 8. "The subjective element of an excessive force claim 'turns on whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.'" *Giron*, 191 F.3d at 1289 (quoting *Whitley v. Albers*, 475 U.S. 312, 320–21 (1986)).

Defendants contend that Defendant Mitchell never struck Plaintiff at all and rely upon statements from Defendants Mitchell and Perry to Correction Department officials wherein they state that no assault ever took place. [Doc. 74-16] at 12–13.  When contrasted against Plaintiff's Complaint, Amended Complaint, multiple grievances, medical records, and Mr. Paschoal's statement, the Court is bound to find that a material question of fact remains as to whether Defendant Mitchell in fact struck Plaintiff in the head.

Defendants argue that Plaintiff's testimony lacks credibility because he has told inconsistent stories regarding the source of his neck and vision problems.  The Court rejects that argument.  Although two medical forms indicate that Plaintiff's vision loss resulted from a fight with another inmate, the vast majority of Plaintiff's grievances and medical service request forms attribute the vision loss to the alleged assault by Defendant Mitchell.  *See, e.g.*, [Doc. 74-18] at 15–16; [Doc. 74-19] at 2, 4–5, 8.  The cause of Plaintiff's complaints is by no means certain. The medical records provided by Defendants indicate that optometrists at the New Mexico Corrections Department and at Eye Associates in Albuquerque believed Plaintiff's complaint of vision loss but were uncertain of its cause.  New Mexico Department of Corrections Optometry Exam [Doc. 74-19] at 5–6 (finding "no objective reason" for Plaintiff's vision loss and listing "presumed diagnosis" of retinal atrophy, commotion retinae, or hysterical vision loss); Diagnostic Report from Eye Associates of New Mexico [Doc. 74-19] at 9 (stating that Plaintiff suffers from "left eye photophobia and headache" and listing possible diagnoses of Commotio Retinae or Central Retinal Artery Occlusion).[10]  Significantly, however, neither the Corrections

---

[10] Commotio retinae, or "Berlin's Edema," is damage to the retina following blunt force trauma to the eye. *See* United States National Library of Medicine, http://www.ncbi.nlm.nih.gov/pmc/articles/PMC3380684 (last visited June 12, 2013). Central Retinal Artery Occlusion is a blockage of the small arteries that carry blood to the

Department exam nor the Eye Associates exam ruled out Defendant Mitchell's alleged assault as a cause of Plaintiff's loss of vision.  *See* [Doc. 74-19] at 5, 9.[11]   The reports are, at best, equivocal about the cause of Plaintiff's injuries.   As such, Plaintiff is entitled to have all reasonable inferences drawn in his favor.  *See, e.g.*, *Stack v. McCotter*, No. 02-4157, 79 F. App'x 383, 389 (10th Cir. Oct. 24, 2003) (unpublished) (summary judgment inappropriate when the medical evidence is equivocal on the question of whether defendants' actions were the cause of plaintiff's medical condition or suffering).

Plaintiff's alleged loss of vision is supported by his medical records, which do not rule out the alleged assault by Defendant Mitchell as a cause.   Having found that there is a genuine issue of  material fact as to whether Defendant Mitchell struck Plaintiff, the Court recommends that Defendant Mitchell's motion for summary judgment with regard to Plaintiff's Eighth Amendment excessive force claim be denied.

### c.   Alleged Failures by Defendants Eastridge, Archuleta, and Felix to Treat Pepper-Spray Injuries

Defendants raise the affirmative defense of lack of exhaustion of administrative remedies. They provide documentation evidencing Plaintiff's grievance process with respect to this claim. Upon review of the pertinent records, the Court agrees with Defendants.   In order to exhaust administrative remedies, the New Mexico Corrections Department grievance procedures require an appeal to the Office of the Secretary of Corrections.  [Doc. 74-20] at 12.  Plaintiff did not file

---

retina. The blockage is frequently the result of a blood clot.  *See* United States National Library of Medicine, http://www.ncbi.nlm.nih.gov/pubmedhealth/PMH0002023 (last visited June 12, 2013).

[11] If anything, the Eye Associates record suggests that the vision loss was indeed connected to Defendant Mitchell's alleged assault when it noted, "sadly as this vision loss occurred in Sept[ember of 2010,] there is no treatment possible at this time").  *Id.* at 9.  To clarify, September, 2010, is the month in which Defendant Mitchell allegedly assaulted Plaintiff.  [74-26] at 7–8.  Plaintiff's fight with inmate Moyle occurred in October 2010. Complaint [Doc. 1] at 3.

his appeals against each Defendant until February 8, 2011. *See* [Doc. 74-3] at 4, 8, and 12 (appeals of denials of grievances against Defendants Vigil, Archuleta, and Felix dated February 8, 2011).   That was the same day that Plaintiff filed his original federal Complaint.   *See* Complaint [Doc. 1].   The prison administration did not consider and decide the three administrative appeals until March 2, 2011, well after Plaintiff filed his federal Complaint.   *See* [Doc. 74-3] at 5, 9, and 13.   The Court finds that Plaintiff's claim against Defendants Vigil, Archuleta, and Felix are unexhausted.   *See Jernigan*, 304 F.3d at 1032.   The Court therefore recommends granting Defendants Eastridge, Archuleta, and Felix's motion for summary judgment with regard to Plaintiff's deliberate indifference claims and that the claims and Defendants be dismissed without prejudice.

### d.   <u>Defendant Vigil's Alleged Failure to Treat Pepper Spray Injuries</u>

Defendant Vigil raises the affirmative defense of lack of exhaustion of administrative remedies.   She provides documentation evidencing Plaintiff's grievance process with respect to this claim.   However, upon substantive review the Court finds that Plaintiff has failed to state a claim upon which relief can be granted, and therefore will not first require that Plaintiff exhaust his claim against Defendant Vigil.

Plaintiff does not allege that Defendant Vigil was present in the segregation unit during the two days following the pepper spray incident, or that she personally denied his request for a shower.   Rather, Defendant Vigil's sole connection to the incident is that she denied an emergency grievance he filed on October 27, 2010.   [Doc. 1] at 18; [Doc. 74-2] at 3–5. Defendant Vigil denied the grievance because she felt that Plaintiff's complaint "was not considered an emergency."   [Doc. 74-2] at 3.   She noted that Plaintiff was in a secure area and

that he was "receiving 24 hr. observation in the seg[regation] unit." *Id*.  She encouraged him to follow the normal grievance process if he felt that his needs were not being met.  *Id*.

The individual liability of a defendant sued under § 1983 must be based on personal involvement in the alleged constitutional violation.  *Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009).  That means that there must be "an affirmative link" between the defendant and the alleged constitutional violation.  *Id.* (internal quotation marks omitted).

The Court finds that Defendant Vigil's decision to deny Plaintiff's grievance does not give rise to an Eighth Amendment violation.  The Tenth Circuit has recognized that "a denial of a grievance, by itself without any connection to the violation of constitutional rights alleged by plaintiff, does not establish personal participation under § 1983."  *Id.*  When an inmate's "only allegations involving [particular] defendants relate to the denial of his grievances, he has not adequately alleged any factual basis to support an 'affirmative link' between these defendants and any alleged constitutional violation."  *Id.*; *see also Whittington v. Ortiz*, No. 07-1425, 307 F. App'x 179, 193 (10th Cir. Jan. 13, 2009) (unpublished) (holding that defendant prison officer's denial of prisoner's grievances failed to establish defendant's personal participation necessary to attach liability for the underlying Eighth Amendment claim—deprivation of personal hygienic products).  The Court therefore recommends that Defendant Vigil's motion for summary judgment be granted with respect to Plaintiff's Eighth Amendment claim of deliberate indifference and that the claim and Defendant be dismissed with prejudice.

e.  **Defendants Christie, Honea, and Aragon's Alleged Retaliation for Filing Grievances**

Defendants raise the affirmative defense of lack of exhaustion of administrative remedies. They provide documentation evidencing Plaintiff's grievance process with respect to his

retaliation claims against them. However, upon substantive review the Court finds that Plaintiff has failed to state a claim upon which relief can be granted, and therefore will not first require that Plaintiff exhaust his claim against Defendants Christie, Honea, and Aragon.

It is well established that the First Amendment protects a prisoner from retaliation by prison officials "because of the inmate's exercise of his constitutional rights." *Peterson v. Shanks*, 149 F.3d 1140, 1144 (10th Cir. 1998). "It is [also] well established that an act in retaliation for the exercise of a constitutionally protected right is actionable under 42 U.S.C. § 1983 even if the act, when taken for a different reason, would have been proper." *Smith v. Maschner*, 899 F.2d 940, 948 (10th Cir. 1990) (quotations and alterations omitted). In order to properly assert a retaliation claim under the First Amendment, Plaintiff must allege the following:

> (1) that the plaintiff was engaged in constitutionally protected activity; (2) that the defendant's actions caused the plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) that the defendant's adverse action was substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct.

*Shero v. City of Grove*, 510 F.3d 1196, 1203 (10th Cir. 2007).

Plaintiff claims that several corrections officers retaliated against him as punishment for filing prison grievances. Complaint [Doc. 1] at 11. Specifically, he alleges that Defendants Christie and Honea: (i) altered his food by mashing up his cornbread with his other food, (ii) removed one of his pictures and tore another picture of his sister, (iii) removed his sheets, (iv) denied him a food tray, and (v) threatened him with physical harm. *Id.* 13–14. Plaintiff also alleges that Defendant Aragon recommended that he be placed in "level 6 max lockdown"

segregation shortly after arriving at GCCF as punishment for having filed prison grievances. *Id*. at 15.

Defendants argue that Plaintiff's retaliation claims are without merit and should be dismissed. *Martinez* Report [Doc. 74] at 34–36. They argue, *inter alia*, that several of the acts complained of, such as tearing a photograph and removing Plaintiff's sheets, are not acts that would chill a person of ordinary firmness from pursuing constitutionally protected activity. *Id*. at 35. They further argue that Plaintiff has presented no evidence to support his contention that a desire to retaliate against Plaintiff for filing grievances was a "but for" cause of any of the challenged conduct. *Id*.

The Court agrees that several of Defendants Christie and Honea's purported abuses were not sufficiently serious to have chilled a person of ordinary firmness from continuing to engage in constitutionally protected activity. These include mixing Plaintiff's food together, tearing his photograph, and taking his sheets.[12] *See, e.g.*, *Huertas v. Sobina*, No. 11-3529, 2012 WL 1372146, at *2 (3d Cir. April 20, 2012) (unpublished) (confiscation of personal photographs insufficient to chill a person of ordinary firmness from pursuing protected activity); *Reynolds-Bey v. Harris*, 428 F. App'x 493, No. 09-1472, 2011 WL 1396786, at *9–10 (6th Cir. April 13, 2011) (unpublished) (noting that "prisoners are expected to endure more than the average citizen" and that not every objectionable act directed towards a prison constitutes adverse action sufficient to deter a person of ordinary firmness for pursuing prison grievance process) (citing *Siggers-El v. Barlow*, 412 F.3d 693, 701 (6th Cir. 2005)); *Morris v. Powell*, 449

---

[12] While Defendants Christie and Honea are accused of taking Plaintiff's sheets, it appears that he still had a blanket for his bed at all times. *See* Grievance dated October 6, 2010 [Doc. 74-12] at 16.

F.3d 682, 684–85 (5th Cir. 2006) (*de minimis* retaliatory acts cannot establish a constitutional violation).

More significantly, even if some of the purported abuses could have chilled a person from pursuing constitutionally protected activity, Plaintiff's retaliation claims would still fail because he has not shown that any of the purported abuses were motivated by a desire to retaliate against him for filing administrative grievances. Tenth Circuit caselaw allows an inference that prison officials' actions were "substantially motivated" by protected conduct where the evidence shows (i) the defendants were aware of the protected activity, (ii) the plaintiff directed his complaints to the defendants' actions, and (iii) the alleged retaliatory act "was in close temporal proximity to the protected activity." *Gee v. Pacheco*, 627 F.3d 1178, 1189 (10th Cir. 2010). In this case, Plaintiff has pled none of these three factors. He has not identified any specific grievances that might have motivated Defendants Christie, Honea, or Aragon to retaliate against him. He has never even suggested that they were aware of his grievances. His own Complaint appears to belie his contention that his prior grievances motivated Defendants Christie's and Honea's desire to tear up his cell. [Doc. 1] at 13 (stating that Defendant Christie tore up Plaintiff's cell because he had asked the officer to take a book to another inmate).

To the contrary, the evidence in the record establishes that Plaintiff was placed in segregation because he was administratively convicted of a major-level violation, i.e., his fight with inmate Moyle. [Doc. 74-5] at 18–20, 23–25; [Doc. 74-6] at 3; [Doc. 74-7] at 1–10. Plaintiff admits that his placement in segregation was related to his administrative conviction but nevertheless asserts that his placement was in fact "punishment for seeking help." *Id.* at 15. This conclusory assertion is unsupported by any facts and is insufficient to show a genuine issue

of fact with regard to Defendants' motives in undertaking supposedly retaliatory actions. *See Nielander v. Bd. of Cnty. Comm'rs*, 582 F.3d 1155, 1165 (10th Cir. 2009) ("A plaintiff's subjective beliefs about why the government took action, without facts to back up those beliefs, are not sufficient to create a genuine issue of fact."); *Bones v. Honeywell Int'l, Inc.* 366 F.3d 869, 875 (10th Cir. 2004) (holding that a party cannot manufacture a genuine issue for trial based solely on unsubstantiated allegations).

Even if the Court were to assume that Defendants Christie, Honea, and Aragon were aware that Plaintiff had filed grievances, there is no evidence that Plaintiff ever filed grievances against these specific Defendants prior to the allegedly retaliatory acts. This tends to show that the grievances were not likely a motivating factor in the Defendants' actions. *See Gee,* 627 F.3d at 1189 (causal link in retaliation claims is typically found when the plaintiff directed his complaints to the defendants' actions); *Mallard v. Tomlinson*, No. 06-6019, 206 F.App'x 732, 737 (10th Cir. 2006) (unpublished) (discounting theory that defendants have a motive to retaliate against an inmate who files a grievance against a different corrections officer for an unrelated matter). The Court finds that Plaintiff has not shown that his prison grievances were a motivating factor or the but-for cause behind Defendants' allegedly retaliatory action. The Court therefore recommends that Defendants Christie, Honea, and Aragon's motion for summary judgment be granted with respect to Plaintiff's First Amendment retaliation claims and that the claims and Defendants be dismissed with prejudice.

## IV.    <u>Conclusion</u>

For the reasons set forth herein, the Court hereby recommends that Defendants' *Martinez* Report [Doc. 74], which the Court construes as a motion for summary judgment, be GRANTED IN PART AND DENIED IN PART as follows.  The Court **RECOMMENDS** that:

(i)     Defendants Guerra and Perry's motion for summary judgment with regard to Plaintiff's First Amendment free exercise of religion claim be GRANTED;

(ii)    Defendant Mitchell's motion for summary judgment with regard to Plaintiff's Eighth Amendment excessive force claims be DENIED;

(iii)   Defendants Archuleta, Felix, and Eastridge's motion for summary judgment with regard to Plaintiff's Eighth Amendment deliberate indifference claim be GRANTED;

(iv)    Defendant Vigil's motion for summary judgment with regard to Plaintiff's Eighth Amendment deliberate indifference claim be GRANTED; and

(v)     Defendants Aragon, Honea, and Christie's motion for summary judgment with regard to Plaintiff's First Amendment retaliation claim be GRANTED.

The Court **RECOMMENDS FURTHER** that Plaintiff's Suggestion on Deffendant [sic] Return Paperwork (Motion & Relief) [Doc. 161] be DENIED as moot.

In summary, if these Proposed Findings and Recommended Disposition are adopted in full, then the only remaining claim in the case would be Plaintiff's Eighth Amendment claim against Defendant Mitchell, asserting that he used excessive force when he allegedly hit Plaintiff after Plaintiff was in handcuffs.  Moreover, if these Proposed Findings and Recommended Disposition are adopted in full, then:

(i)      Defendants Guerra, Perry, Vigil, Christie, Honea, and Aragon would be DISMISSED with prejudice;

(ii)     Defendants Eastridge, Archuleta, and Felix would be DISMISSED without prejudice; and

(iii)    Defendant Mitchell would be the only remaining Defendant, and the Eighth Amendment excessive force claim against him would be the only remaining claim.

---

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN FOURTEEN DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition, they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any written objections with the Clerk of the District Court within the 14-day period if that party wants to have appellate review of the proposed findings and recommended disposition.  If no objections are filed, no appellate review will be allowed.**

---

_____

**STEPHAN M. VIDMAR**
**United States Magistrate Judge**